If it pleases the Court, my name is Dominic Jenseel. I'm a partner in the firm of Gordon Silver in Las Vegas, Nevada, and I'm here on behalf of SOC. The threshold question, and an important one, an important one for not just this case but for others that might follow, is the question of whether a corporation has the same rights that Mr. Benigni had to stand before a federal court in a 1983 action seeking to enforce its right to pursue its occupation, its right to do business. I submit that I have been searching for a principled reason why it should not be able to do that, because it's pretty clear that there are some rights that a corporation doesn't have. It is clear-cut law, black-letter law, that it doesn't have a Fifth Amendment privilege. And in the Fleck case, although it wasn't criticized as having been frivolously asserted, this Court, I think, came to the right decision that a corporation which can't have sex pretty much doesn't have that kind of a fundamental right to come in and try to enforce it in a 1983 action. But this is different, because there's really no reason for a corporation to exist, even nonprofit corporations, other than the business activity or the charitable activity that they are involved in. And so to take the position that it does not have such a right provides a giant disincentive to do business in that fashion. And I can see you want to ask a question. Well, it's not so much a question as maybe it's just an observation, but there was a case that was not brought to our attention by either side called Wedges Ledges of California v. City of Phoenix. I think the Ninth Circuit answered that. You mean there's a case that I don't know, that I haven't read? I think it's on point, actually. I don't know the case. So if I didn't cite it, maybe I should have, and maybe it would have made this frivolous, or maybe it would have said that it's not. I think it's cited in the reply brief, but not for that principle. But anyway, let's assume that you have standing. Where does that leave us with the district court's order? Because the district court had alternate basis on which to deny relief. If we had standing, then the next question really boils down to how long do you have to wait? Do you have to wait as long as Mr. Benigni did so that you're basically out of business and you've taken a loss and all you've got left is money damages? Or can you come to a federal court and say, look, this is going to lead to that? And on the record before Judge Jones, and in particular the oral argument, the argument on the motion, it was brought to his attention, and it was brought to his attention in the complaint itself at paragraphs 45 through 49, that this was a pattern. There had been an ongoing battle with the Las Vegas Metropolitan Police Department. There has been a good deal of litigation that had preceded it, including a consent decree on a RICO 1983 action where Metro consented to stop doing what we had sued them for on that case. And had this fallen within that, we would have gone in and sought a contempt. But it didn't. It was a tactical change, and so we filed another different lawsuit. Separate and apart from that. Okay. I might interrupt you for a minute. The requirement, and I think the district court is quite correct on this, is that there has to be a substantial interference. So your pleadings really don't allege that. I think they do, if I may. Well, let me just add a couple of sentences, and then I want you to address it. So assuming that's the case, the district court denied you leave to amend, do you think you could amend the complaint to state a cause of action if that's the threshold requirement? And I guess your first answer is it does, and I want to hear that. And then second, if we think that it doesn't, can you amend your way out of trouble? If the reason that you think that it doesn't is because it wasn't ongoing in and of itself, that it was a single episode, then I would submit to you that the allegations in the complaint at paragraph 40 indicated that we had other employees that were telling us that if they were subjected to that same kind of treatment, then they were going to leave as well, which, of course, would put us closer to the Benigni fact pattern. And in our situation, because of the prior activity, if the court notes, we filed the complaint in this case on November the 6th, that's the date it was filed. Ms. Bly quit on September 28th, and that interim is when the employees were saying, we're going to quit too if that happens to us. And so it was primarily the injunctive relief that we were seeking here. Candidly, simply filing the lawsuit seems to have gotten us there. We seem to have arrived. They stopped doing it. They didn't do it anymore. And let's remember what it was that we are not complaining about having lost an employee. I know that my worthy adversary wants to characterize it that way, and I think that Judge Jones did as well, but that's not what this case is about. There's no single employee that's going to keep a business alive or not alive. Everybody's pretty much replaceable. But the situation that we had here was the potential for employee flight that would have really crippled the business, that would have really taken it down. And so I think that to the extent that the pleading was as it was in itself, I don't think it needed to be amended for that purpose. Now, the problem here, and I think it did state, if not at the margins, if not at the polarized end of outrageous conduct, under Nevada law, and even under federal law, you cannot eavesdrop, government cannot eavesdrop, and government can't employ a civilian person to do it at government direction without a warrant. And what they were seeking to do here was to have an employee who was not a party to these conversations that they wanted her to record. They wanted her to bring the recorder in, leave the recorder on, and not be a party to the conversations. That's a surreptitious surveillance that Title III is directed at. Separate and apart from that, and that, by the way, was directly affecting the rights of the plaintiff here. Separate and apart from that, and while I would agree that the relationship between parent and child of Ms. Bly and her children was not something that we could directly assert, because we don't have standing with respect to that parent-child relationship, to the extent that that was the tactic that was employed in order to get to SOC, then we do have standing because we were the targets of that conduct. And so if that's what needed to be cleared up, I think we could have done that by way of a warrant. Let me ask you this question. Is there a distinction between them, whether they acted correctly or incorrectly here, attempting to get evidence to prosecute your client, which is apparently what they were trying to do, I would assume. Okay. And they're attempting to, as you have asserted, drive him out of business. There seems to be, you know, I think Judge Jones took the position that what they were doing was they were attempting to get evidence to prosecute. There's nothing wrong with that. But not to drive your client out of business, which might have had the consequential, the prosecution might have had a consequential impact of driving your client out of business. It's not uncommon that if somebody gets indicted, their business suffers dramatically, obviously. Even if they don't, even if they don't, Benini didn't get indicted. What happened to him? The Arizona cases didn't result in indictment. What happened there? See, and that's the real danger. That's what I'm asking you. How does this play into your theory? Well, there's absolutely nothing we can complain about if they want to investigate my client for a criminal offense, find probable cause in a legitimate fashion, and prosecute him. Criminal lawyers make a living on that. We wouldn't want to stop that. But the fact of the matter is that there's plenty to complain about when they're going to try to do an unlawful, essentially eavesdropping, and use it as a tactic, and the kind of pressure that they put on Ms. Bly, use that as a tactic to drive you out of business when they can't get probable cause. That's exactly what 1983 is about. That's what it's supposed to stop. You have essentially conceded here today, and I think you're right, that your client has no standing to assert whatever issues Ms. Bly might have. No. She wants to file her own 1983 lawsuit. She's perfectly capable of filing it. She has the right to file it. She's capable of doing it or not. Well, apparently she's left Nevada. But if she chose to do it, she could do it, right? Right. Your client doesn't have standing to file her lawsuit. We do not. But to the extent that the tactic was used on her, and that it became known by the other employees of our business, and that, as a result of that, they have said, look, we're going to leave if that's put to us. Now, that is putting us out of business without us having committed a crime. That's exactly the kind of abuse that we're complaining about here. And I've got six seconds left, and I'd like to reserve it. We're actually over, but we'll give you a little time for rebuttal. Thank you. Thank you. Good morning, Your Honors. My name is Peter Rangulo. I represent defendant LVMPD. Could you speak a little bit, move the microphone a little bit closer and speak in this big room here? It's always a condition that people complain about, and I always think I'm overcoming it, and I never seem to be able to. My name is Peter Rangulo. I represent LVMPD in this litigation. The litigation as it was originally phrased came essentially as an assertion of Mrs. Bly's rights, which Mr. Gentile has now admitted they're not seeking to try and somehow support, although that was the focus of the briefing in the matter before Judge Jones. The question then becomes whether or not the SOC has its own independent occupational liberty claim, and if so, what standards need to be applied for that constitutional claim to be recognized. We've provided the court a number of cases that I believe stand for the proposition, the clear proposition, that it requires almost complete annihilation of the business, not a temporary cessation of profits, not a mere interruption in business or in future potential profits to come forward. The cases that have all been cited essentially have someone driven almost to the brink, where they either close the doors, put the business up for sale, or stand at the threat of losing all of their investment. That was not alleged in this complaint. It was not an issue. But it could have been. That was sort of the reason I asked the question about leave to amend. I mean, if they alleged it, even though you would dispute it, that gets them over the hurdle of pleading, right? I don't disagree, Your Honor. And had that been the focus of the subject of the request to amend, Judge Jones may have considered it differently. It was not. The only statement on the request to amend was, without providing the court a copy of the proposed amended complaint, without providing him legal authority suggesting to him by motion what it was he wanted to do, was at the point that it was apparent that the case was being dismissed, was the single line, will the court consider giving this leave to amend with individuals, to which the judge said no. And so that was not raised before Judge Jones. And not ñ I read that part of the transcript. Why do you think that he should have ñ if the question is standing, why shouldn't the district court have allowed an amendment to add plaintiffs that would provide standing? I think in Judge Jones' defense, one, we don't know who the individuals are. I presume it's not Mrs. Bly because she's never ñ All we have is this statement in the transcript. Correct. I mean, that was it. There was no questioning who did you want to add, what counts you want to add. Do you think you can ñ that was just it. Now, there may be a different explanation for it, but my question to you is, why in the normal course of liberal pleading shouldn't the district court grant leave to amend, say fine, but ñ or make some further inquiry? My understanding, Your Honor, of the entire transcript was that the discussion went to the individual rights held by, for example, the personal owner of the company, not the company itself, but it wasn't corporations, it was the DBA. But in the case of corporations, even, it was the people who held the liquor license, for example. And so in that context, my guess would be that Judge Jones, in considering the request to amend for individuals, meant amend for the individual owner of the company. That, I believe, was a contextual issue of what was raised before him. And in his mind, that wouldn't have made any difference. And I would agree with that. Naming the personal holder of the company wouldn't make any difference because there wasn't the allegation of the substantial business-ending threat that would be required to find an occupational claim. And so they would have amended, but it would have been a futile amendment because it wouldn't have changed the outcome of the case. And so I believe he's still appropriate, then, for reaching that decision that he did. In his review of the law, as we presented it to him, this simply was not alleged as a case of constitutional proportions for either an occupational standard or even an outrageous standard and substantive due process. I would note briefly, in that regard, the two Ninth Circuit cases cited, Bogart and Simpson, both dealt with convictions. To find the person who was the target was the subject of convictions. And so that's, again, a personal right to the person who's been injured. And they have a right to go through and say, look, my conviction was based on outrageous police conduct. Here, again, the corporation doesn't have those kinds of rights, and it didn't reach that level. And so, therefore, there simply wasn't a constitutional basis for it. Judge Jones was also intimately familiar with these cases. He had been involved in a case before where summary judgment had been granted and felt, at the conclusion, having looked at this complaint and knowing the history of this particular client with which he was personally involved, determined that it was a frivolous filing and granted an award of attorney's fees and costs, which we believe was appropriate under the circumstances. Why was it frivolous? It was frivolous, Your Honor, because, again, as it was originally brought to the court, as it was originally phrased and argued, the corporation didn't have standing. Under clear constitutional law, it didn't allege the kind of substantive injury to the corporation that would have been required to claim a due process, I mean, an occupational liberty interest or substantive due process outrageous claim. The claims that Reedy focused on were personal to Ms. Bly, who was not named as a party. And it was obvious at that point, it was obvious once the motions had been filed, where the weaknesses were set forth, and yet plaintiff continued on with the litigation, his decision then was that there wasn't proper grounds for it, and he awarded the fees. I know. It troubles me that, you know, because I think Judge Jones, it's really not a question of standing. It's failure to state a claim for relief. That is, the allegation that the city makes is that, well, it is a question of standing with respect to the employee. That's correct. And they acknowledge they don't have standing to sue on her behalf, to seek vindication of her alleged deprivation of her constitutional rights. They did that today. That's fine. But they have – their claim was that their right to engage in an occupation was infringed. And it's really a question of pleading, as Judge Thomas has tried to draw out, whether the allegations were sufficient. It's unusual not to grant a party leave to amend at least once. That wasn't done here. And our case law, I think, the way I read our case law, recognizes that a corporation does have a due process – a substantive due process right to pursue an occupation. Whether these allegations here were sufficient, you know, is questionable. But I'm not sure – I'm not so sure that it rises to the level of frivolousness. Well, and I appreciate that, Your Honor. If I might, though, again, I would submit to the Court that the clear standard of law is that it has to be on the brink of financial annihilation. Maybe not quite that far, but certainly close to that point. But this is on the pleadings. That's the difficulty. I mean, accepting what you say is true or else that there is substantial interference with the business, it's not much of an amendment to say it substantially interfered with the business. And, Your Honor, I suppose that would have been in the province of plaintiffs or appellants, I should say, to make that argument to the judge. The only thing they asked to amend was to name individuals, not to say, Your Honor, you know, we realize now that we have not sufficiently identified that this is going to be – we think this is going to be the termination of our business. We'd like you to go ahead and include that amendment. Well, right. But that's because the judge said – I'll just quote from the transcript. There's absolutely no – I'm going to grant the motion. There's absolutely no substantive due process right that was deprived to your own by a corporation.  argument and the court did not respond. All right. Your Honor, would the court give us leave to amend with individuals responding to the standing argument or the – or the question of whether the corporation has the right? The court, no. That's it. I mean, you can't fault them for not filing an amended complaint when the court just says no, I'm not going to let you. You have to file another lawsuit. But, Your Honor, in Nevada, they knew when the motion had been filed, if they felt that it was a concern to them, they had an obligation to file a motion before the court to suggest to the court what the changes would be, to give Judge Jones some understanding. Again, in context of asking to add individuals, it's not going to change what's the fatality of the pleading in this case. Well, no, but I mean, if once the other – once you decide to amend to cure one problem, then usually you'll take a look and see if you can cure the other pleading problems if they're identified. And not that maybe they would have rested on the pleadings. We don't know that. But – It doesn't look like there's a factual issue. I mean, look, you know, regardless of the merits of the legal argument, the conduct here, if we presume, as you have to on a motion to dismiss, is true, is that the police department here acted in a fairly egregious way. I mean, to take a woman, regardless of what kind of business it is, to take a woman, essentially using police authority, make her go in the car, take her down to some remote location, and berate her, and then threaten her with taking her children away from her if she doesn't comply with their request to surreptitiously bug her employer. Well, it doesn't seem to me like the kind of conduct we would like to see from our police officers. And I think you would agree with that, wouldn't you? I absolutely would, Your Honor. If those allegations were true, they're troubling at the very least. Well, you're taking this true on a motion to dismiss. That's correct. But those – I'm sure if you have your client, you want to get in – you want to say you don't think they're true, and that's fine. But we're stuck with the pleading. I see my time has expired. No, no. If I might, just thank you, Your Honor. The presumption in the motion to dismiss with those allegations were true, troubling as they are. Those allegations, even as they stand, fail to establish the type of outrageous conduct substantive due process would require to create a constitutional claim for the corporation. For Ms. Bly, it may be a different issue, but not as it relates to this corporation. And so – and that's the position that was brought before the Court. And that's the decision that Judge Jones made. And his decision on the motion to amend was made as a discretionary call on his part given the request that he received from plaintiffs. It's not his obligation to guess what they're going to come up with or what they're going to do or how they're going to amend the complaint or what they'll do. They told him what they wanted. If the judge is required to guess, then why do we file complaints at all? Why not simply identify the parties you want and have the judge just presume that somehow when the case unfolds, the parties will figure out what they're going to sue? It's not appropriate. And so the judge is bound by the pleas of the complaint. He's bound to rule on what the parties ask him to do. And in this case, all they asked him to do was to amend the complaint simply to name individuals. And it simply wouldn't have been availing. And so therefore, Your Honor, we ask the Court sustain the decision of Judge Jones. Thank you. Thank you, counsel. Just briefly, directing my attention to the amendment issue. I said that I thought it stated the claim at 45 to 49 in terms of the pattern. But what it didn't do is talk about what the facts of those patterns were that had been brought up in earlier litigation. Perhaps if we would have articulated that as you would in a fraud lawsuit where you have to have a more particularized pleading, then Judge Jones would have seen what we were talking about in terms of the danger that this kind of activity had presented in the past in terms of causing this business to have to close. Or it didn't close, but putting it in that posture. And that kind of an amendment would have flushed out the facts more. Now, you know, you're not supposed to have to do that in a federal pleading necessarily. But if that would have been what the judge would have accepted, we would have done that. It's easy to do. The facts are there. Well, you know, you didn't really plead a cause of action under Sir Ronald Gosco and all those reputation damages which might have reduced the quantum of proof on damages that was required. You pled a denial of the right to pursue an occupation, and the standard is pretty high for that. And even if you're allowed to amend on these facts, it's hard to see how ultimately you'd survive summary judgment on that if this is what you have. Well, and the reason for that is, again, let's see. I mean, I don't want to presume your proof or anything, but, I mean, I just, as we look down the road, if you accomplished your ends, maybe you and the police department ought to sit down and see if you can work out an agreement on this. We're going to deal with the law on it. But, frankly, it seems to me that this may be a case where you want to sit down with your friend and counsel on the other side and say, well, why can't we work something out? And maybe that's just impossible given the history, but. Actually, we do that, Your Honor. We don't do it with Mr. Angulo because he's a civil lawyer who does only civil rights actions. We do it with police counsel. And I will tell you that this lawsuit, as I said before, the lawsuit achieved its purpose. They stopped. It didn't happen. Well, when you said that, I'm thinking, well, why are we here? We're here for a number of reasons, one of which is that I bristle at being told that this was a frivolous lawsuit, candidly. We've got the fee issue, of course. But I'm just, I mean, and I say this not, we have the case in front of us, we're going to decide it. Right. But sometimes if you step back and you say, well, you know, really, the parties aren't that far apart from a resolution that would allow them to solve their business disputes. And so I just make that observation. We're going to, you know, look at the cases carefully and consider the arguments on both sides on this. But just a thought. Yeah. Candidly, at this point, and I will admit to you, it would be a waste of time to amend this complaint. The problem that was presented is over. If it happens again, we'll reallege this fact as part of an ongoing pattern. Okay. So I'll concede that at this point. I mean, you know, it's, we don't need to go back and amend. It would be a money damages case at this point in time, and it probably wouldn't be worth what it was, what it would take to pursue it. Okay. But as I said to you before, if a lawsuit is filed for injunctive relief and all of a sudden the conduct stops, it served its purpose. It wasn't frivolous. Yes. No, I understand your argument. I also appreciate your candor and what you anticipate doing. Thank you. Appreciate both sides and their arguments. The case is heard. It will be submitted.
judges: Thomas, Paez, Ezra